## SUPREME COURT.

IN THE MATTER OF THE PETITION OF WILLIAM HOLMES, FOR
THE CUSTODY OF HIS CHILDREN.

Where *spiritualism* with its usual tendency to *free love* on the part of the hus-
band works its legitimate results, in the separation of his wife from him, she
will be awarded the custody and care of the younger children, and the older
children put to a boarding school (where the husband's means are sufficient) at
the husband's expense; (without any particular modification of the general sen-
timent, that he is a *public fool.*)

SIDNEY S. HARRIS, *counsel for petitioner.*

H. W. ROBINSON and J. W. GREEN, *for defendant.*

LEONARD, Justice.   William Holmes applies by petition
invoking the equitable powers of this court to obtain the
custody of his children, Anna and Ivah, now in the care of
their mother, at Brooklyn.   The petition has been served
upon the mother, with an order from the court requiring
her to show cause why the prayer of the petition should
not be granted; and she stands, therefore, as a defendant
in this proceeding, claiming to retain the custody of her
daughters.   William Holmes and Charlotte Louisa School-
craft—whom I shall call the defendant—were married at
Troy, in this state, in 1841, and the relation of husband
and wife still exists between them.   There are three chil-
dren of the marriage, all of whom are daughters.   The
eldest, Anna, aged about seventeen, resides with her
mother, as the result of her own choice.   The second,
Carrie, aged between fourteen and fifteen years, in the
exercise of her choice or judgment, resides with her father,
the petitioner.   The third, Ivah, aged between seven and
eight years, resides with her mother, the custody of this
child having been awarded to the defendant, in October
last, by the direction of the judge of the supreme court,
at Chicago, in Illinois, under a proceeding in relation to

the custody of these children by *habeas corpus*, instituted in that court by the defendant, to obtain the custody of all the children from the father. The petitioner resided with his wife at Troy, during the summer of 1859, and they had previously resided in this state during the principal part of their married life. In August of that year, the petitioner, without apprising his wife of his intention, and without any provision for her support, left her and removed with his children to Chicago, and has since resided there and elsewhere in the western states. He brings no charges against his wife to justify his desertion of her, or to exclude her from participating in the nurture of her children, except that she is, as he alleges, of an irritable and jealous disposition, and has become infected with spiritualism. Her denial of this latter charge appears, however, to be fully corroborated by the evidence of her friends, and her acts and faith have never, I think, extended further than the approval of her husband, and his own wishes at the time and perhaps her own curiosity as to the rapping manifestations might justify. Mrs. Holmes, on her part, also charges that her husband is possessed with the delusion of spiritualism, including a tendency to accept the free love part of the faith. The whole of this charge is repelled by him vehemently. Whatever may be his present views upon that subject, he did undoubtedly take part as an associate with a company who were engaged in lecturing and exhibiting the wonderful manifestations of spiritualism in public, traveling from place to place, for some time including a female medium in the company, in regard to whom several passages in a letter of the petitioner, which have come to the hands of Mrs. Holmes, and have been produced in this proceeding, justify some irritability and jealousy on the part of a wife. Preliminary to the commencement of this proceeding, the petitioner made overtures to the defendant to renew their marital relations, and offered to provide a home for his

wife and children with him, if she would accept it, as comfortable as his circumstances would warrant, which overtures have been declined by her, unless he will prove by a course of conduct decided upon by her that he is really sincere in his present professions. It should also be observed that the defendant produces two letters from the petitioner, written in March, 1859, in which he describes the relations then existing between them as legal sensuality—" a crime against the higher law of their own souls ;" " that their intercourse is not prompted by mutual love;" that it is " so damning, so repulsive, I hereby swear I will suffer no more for that sin." He does not want " a housekeeping, social, humdrum, common place relation for purposes of physical comfort and personal convenience, but that nuptual union which consecrates soul to soul;" thinks she will " realize that theirs was a false marriage," the final object of several pages of such delusive, foolish and wicked sentiments being to convince his wife that a separation will be the best and happiest thing for her as well as for him. The petitioner shows that his pecuniary resources are sufficient for maintaining his family in a good social station in society, and to afford to his daughters a liberal education, which is now being much neglected. The defendant, with her two daughters, Anna and Ivah, are now residing with the mother of the defendant, in Brooklyn, in comfortable though not in affluent circumstances, and the present associations and training of these children are such as are manifestly good for their moral culture and well being, and their present protectors are willing and desirous of continuing the same kindness to the defendant and her children as long as it may be necessary, although they are under no obligations to do so. Both the parents of these unfortunate children are tenderly attached to them and desire their society, and are truly and deeply interested for their welfare and happiness. I cannot, however, look upon the complaints which the

petitioner makes against his wife, as in any degree warrant-
ing a separation from her.   The grounds for his desertion of
her are such undoubtedly as many endure without a murmur
ever reaching the public ear, from motives of even far less
magnitude than the future respectability and happiness of
their children.   It is the duty, too, of a faithful mother, to
say nothing of the duties pertaining to a wife, to undergo
much and suffer long before she submits her grievances for
adjustment in a court of justice as against her husband.
It cannot be overlooked in this case, however, that the
conduct of the petitioner towards his wife has not been
such as to entitle him to think that she would, without
evidence of his repentance for his cruel desertion of her,
and for his harsh and unmanly letters, and for his still
more cruel treatment in deceitfully bereaving her of the
society of their children, be willing to remove with him
from this state, if such is his desire, or to a great distance
from friends on whom she can get relief or assistance in
case his offers to again provide a home for her and the
children should again prove to be merely a desire for again
separating her from the children now with her.   These
last observations are made with reference to the overtures
of the petitioner to his wife for a renewal of their former
relations and her reply to them.   The petitioner has, how-
ever, demanded the custody of the children as his legal
right as their father; without reference to or in defiance
of the particular circumstances of this case.   From the
examination of the authorities reported in such cases in
this state, I am satisfied that the welfare of the children
is the first thing to be considered.   Guided by that rule,
the case is not free from difficulty.   The feelings of the
father may be alienated by a long separation from his
children.   Having one child who has voluntarily chosen
him as her guide and protector, his affections may be cen-
tered on that one, to the exclusion of the two who are sub-
jects of this controversy.   Such result may very probably

injuriously affect their pecuniary expectations in case of a testamentary devise by the father before his death. The father may not see fit to afford them so liberal means of education and support as they would otherwise receive. In the case of a son the father would have the better means of introducing him into business upon the son's attaining manhood. But in the case before us, if the mother refuses to renew her former relations with the petitioner, I do not find a satisfactory prospect that we can afford his daughters such a home as is necessary for the proper rearing, protection and respectability, having reference to his means and their present situation. My solicitude is less in respect to Anna, who, from her age and appearance, has now reached the threshold of woman's estate, and has no doubt the discretion to make a just selection of a home, if driven to choose between her parents by their ill considered separation. In my opinion, it will be wiser for her, in view of the future, to discard all pecuniary expectations, if necessary so to do, and to choose, as she has already done, her mother as her guide, instructor and companion. Let it not be understood that I counsel Anna to treat her father with disrespect, or even to refuse or slight any kindness or advice he may offer her. On the contrary, should he desire to furnish her the advantages of further education at any female seminary in this state, within one hundred miles of Brooklyn, during the next two years, it will be her duty to comply with such reasonable direction of her father, and the duty of the court to lend its aid in enforcing compliance. The petitioner is not to be prevented from visiting his daughters, wherever they may be, at reasonable times. Ivah must be committed to the custody of her mother for rearing and education, until she reaches the age of twelve years. Should her father then desire to increase her advantages for education, he may direct her for that purpose in the same manner as is provided as to Anna. Unless the par-

ties agree as to the seminary and boarding place for Anna and Ivah, the directions of the petitioner in these respects are to be subject to the approval of the court. Mrs. Holmes is to have the right to visit her daughters at her pleasure while they may be attending their education. Subject to these provisions, the application of the petitioner is denied.